**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

INTERNATIONAL BIOMEDICAL, LTD.

      Plaintiff,

   v.

GENERAL ELECTRIC COMPANY and
DATEX-OHMEDA, INC. (d/b/a GE
Healthcare),

      Defendants.

Case No. 1:14-cv-00397-LY-ML

**<u>PLAINTIFF INTERNATIONAL BIOMEDICAL LTD.'S OPPOSITION
TO DEFENDANTS GENERAL ELECTRIC COMPANY AND DATEX-
OHMEDA, INC.'S MOTION TO DISQUALIFY BARNES & THORNBURG LLP
AND FOR DISMISSAL OF PLAINTIFF'S CLAIMS AND CERTAIN
AFFIRMATIVE DEFENSES WITH PREJUDICE</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

I.      INTRODUCTION ........................................................................................................- 1 -

II.     FACTUAL BACKGROUND.......................................................................................- 2 -

III.    APPLICABLE LAW ...................................................................................................- 4 -

IV.     MR. RATHBUN DID NOT VIOLATE TEXAS DISCIPLINARY RULE 1.09(a).......- 5 -

        A.      Rule 1.09(a)(1)...............................................................................................- 6 -

        B.      Rule 1.09(a)(2)............................................................................................- 10 -

        C.      Rule 1.09(a)(3)............................................................................................- 15 -

V.      NO EVIDENCE SUPPORTS DISQUALIFICATION OF B&T ................................- 18 -

VI.     THERE IS NO BASIS TO DISMISS IBL'S CLAIMS AND DEFENSES
        WITH PREJUDICE ...................................................................................................- 22 -

VII.    CONCLUSION..........................................................................................................- 24 -

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)..............................................................................................................23

*Finalrod IP, LLC v. John Crane, Inc.*,
    2016 WL 866930 (W.D. Tex. Mar. 3, 2016) .......................................................... *passim*

*Gillette Co. v. Provost*,
    33 Mass. L. Rptr. 327, 2016 WL 2610677 (May 5, 2016) ....................................... *passim*

*In re Amer. Home Prods. Corp.*,
    985 S.W.2d 68 (Tex. 1998)...............................................................................................18

*National Oil Well Farco, LP v. Omron Oilfield & Marine, Inc.*,
    60 F. Supp.3d 751 (W.D. Texas 2014) ....................................................................20, 21

*Power MOSFET Techs, L.L.C. v. Siemens AG*,
    2002 WL 32785219 (E.D. Tex. Sept. 30, 2002)....................................................9, 10, 18

*Telectronics Proprietary, Ltd. v. Medtronic, Inc.*,
    836 F.2d 1332 (Fed. Cir. 1988)....................................................................................8, 9

*Woodson v. Surgitek, Inc.*,
    57 F.3d 1406 (5th Cir. 1995) ...........................................................................................23

**Rules**

Tex. Disp. R. 1.09(a)............................................................................................. *passim*

Plaintiff International Biomedical Ltd. ("IBL") respectfully submits this brief in opposition to the Motion (Dkt. No. 160) of Defendants General Electric Company and Datex-Ohmeda, Inc. (collectively "GE") seeking to disqualify Barnes & Thornburg LLP ("B&T") from representing IBL in this litigation and seeking dismissal of IBL's claims and certain affirmative defenses with prejudice.

## I.  INTRODUCTION

As fact discovery nears a close, IBL has generated a mountain of evidence demonstrating that GE has engaged in a pattern of misconduct.  GE systematically and repeatedly failed to provide highly relevant information to the U.S. Patent Office during the prosecution of the patents it now seeks to enforce.  GE made false representations to the Patent Office to obtain its patents.  GE has yet to explain the bases for its allegations of infringement against IBL, when key details of the product it accused of infringement were confidential at the time GE threatened IBL with legal action and at the time GE filed its counterclaims in this action.  Despite GE's knowledge that its patents were fraudulently obtained and that it did not have a legitimate basis to assert infringement by IBL, GE nevertheless threatened IBL in an effort to stifle competition.

In the face of this damning evidence, GE will stop at nothing to obfuscate its misbehavior.  GE's Motion seeks to avoid scrutiny of its own misconduct by smearing IBL's counsel with baseless allegations.

As early as 2010, Mr. Rathbun assured IBL that he possessed "no confidential information relating to the GE infant warmer" and did not possess "any information that would conflict [him] out of working with IBL." (Ex. 1.)  This is not surprising, as the GE patents-in-suit were issued and publicly available *several years* prior to Mr. Rathbun's engagement by IBL.

On the merits, GE's Motion utterly fails to prove its stated premises: that Mr. Rathbun violated his duties to GE as a former client; that Mr. Rathbun provided B&T with any confidential or privileged information of GE; or that International Biomedical has done anything improper.

## II.   FACTUAL BACKGROUND

GE's Motion purposely avoids any coherent presentation of the facts.   A thoughtful recount, by itself, dooms GE's Motion:

> July 14, 2009 – Roger Rathbun conducted a patent search to identify U.S. patents and patent applications related to infant warmers and incubators.  The report identified 42 patents and patent applications, including only one of the patents-in-suit, U.S. Patent 7,264,586.  There was no infringement or validity analysis of any of the patents identified.  The report contained no information confidential or privileged to GE.  (Ex. 2 at Entry No. 117C.)
>
> September 1, 2009 – Roger Rathbun provided an update to the July 14, 2009 patent search.  This update identified 20 additional patents, including 3 of the patents-in-suit:  U.S. Patents 6,245,010; 6,733,437; and 7,264,586.  There was no infringement or validity analysis of any of the patents.  The report contained no information confidential or privileged to GE.  (Ex. 2 at Entry Nos. 214 and 26.)
>
> December 14, 2009 – Roger Rathbun provided IBL with the results of a patent search directed to infant incubators.  None of the 5 GE patents-in-suit was identified.  The report contained no GE confidential or privileged information.  (Ex. 2 at Entry No. 26.)
>
> January 9, 2010 – Roger Rathbun provided IBL with a preliminary opinion of a non-GE patent.  None of the GE patents-in-suit, nor any GE confidential or privileged information, was mentioned in the opinion.  (*Id.*)
>
> August 14, 2010 – Roger Rathbun assured IBL in writing that he knew of "no confidential information relating to the GE infant warmer" and that he did not "possess any information that would conflict [him] out from working with" IBL to review the design of IBL's warmer "to avoid conflict with the patents of other parties," such as GE.  (Ex. 1.)
>
> June 15, 2011 – Roger Rathbun provided IBL an opinion letter analyzing IBL's reflector design and GE Patent 6,245,010.  This letter has been produced to GE during discovery in this litigation.   The opinion letter contained no GE

confidential or privileged information.  (*See* Ex. 11 to Sklenar Decl. (Dkt. No. 162-12).)

March 30, 2012 – Roger Rathbun provided IBL with an update to the patent search reports of September 1, 2009, and December 14, 2009.  The report identified 54 patents or patent applications.  None of the 5 GE patents-in-suit were identified.  There was no GE confidential or privileged information mentioned in the report.  (Ex. 2 at Entry No. 119B.)

November 21, 2012 – Roger Rathbun provided IBL with an opinion letter concerning U.S. Patent 6,471,634.  In the letter, Mr. Rathbun opined that the '634 patent was invalid in view of a service manual describing a Resuscitaire infant warmer.  The Resuscitaire infant warmer service manual was not provided to the Patent Office during prosecution of the '634 patent.  This opinion letter has been provided to GE during discovery in this litigation.   Mr. Rathbun's analysis contained no GE confidential or privileged information.  (*See* Ex. 12 to Sklenar Decl. (Dkt. No. 162-13).)

Mid-2013 – According to GE's Motion, Mr. Rathbun ceased representing GE in 2013.

February 26, 2014 – GE sent a letter to IBL asserting that IBL's LifeBorne Infant Warmer infringed 5 GE patents.  (*See* Ex. F to Compl. for Decl. J. (Dkt. No. 1-6).)

March 12, 2014 – John Segars and Mike Mackin discuss scheduling a meeting in April for Roger Rathbun and Mike Mackin to review the features of the IBL LifeBorne Infant Warmer and prepare a "final" updated patent search.  This work was unrelated to GE's letter of February 26, 2014.  (Ex. 2 at Entry No. 161A-B.)

March 17-31, 2014 – B&T and IBL exchange correspondence concerning scheduling a meeting between Paul Hunt of B&T and IBL.  (*Id.* at Entry Nos. 107B-E, 147A, 149A-B, 151A-B, 152A-B, 153A-B, 155A, and 156A; these are retransmissions of the same communication as the result of an extended email chain.)

April  2014 – Roger Rathbun, Paul Hunt, John Segars, and Mike Mackin meet at IBL's facility in Austin.  (Ex. 2 at Entry No. 124.)  Mr. Hunt advised Mr. Mackin and Mr. Rathbun not to disclose any information that may be confidential to GE.  (Hunt Decl., Ex. 3 at ¶ 3.)

May 8, 2014 – IBL filed its declaratory judgment action.  (Dkt. 1.)

May 8, 2014 – Mr. Segars of IBL forwarded to Mr. Hunt a copy of Mr. Rathbun's prior art search, dated April 8, 2014.  None of the 5 GE patents-in-suit were mentioned.  (Ex. 2 at Entry No. 14.)

September 26, 2014 – IBL sent Mr. Rathbun's two opinion letters to B&T: Mr. Rathbun's June 15, 2011 opinion letter concerning non-infringement of the '010

patent, and Mr. Rathbun's November 21, 2012 opinion letter concerning invalidity of the '634 patent.  As indicated above, neither of these letters contained any information confidential or privileged to GE.  (Ex. 2 at Entry No. 220.)

## III.   APPLICABLE LAW

The foundation of GE's Motion is that Mr. Rathbun violated his ethical obligations to his former client, GE, under the Texas Disciplinary Rules.  GE fails to explain how the Texas Disciplinary Rules govern Mr. Rathbun's conduct, despite the fact that he never appeared in this case. [1]  GE's Motion does not establish that Mr. Rathbun was licensed to practice in the State of Texas or was otherwise subject to the Texas Disciplinary Rules at any relevant time.

In a footnote, GE states "this Court would have jurisdiction over Mr. Rathbun" based upon a bald assertion that Mr. Rathbun advised IBL and B&T "in connection with the prosecution of this lawsuit."  (Defs.' Mot. at 12, fn. 8 (Dkt. No. 160).)  GE makes this assertion without any proof or citation to the record.  As outlined above, this accusation is *not* supported by the facts: Mr. Rathbun did not provide any counsel leading to the filing of IBL's complaint. (*See* Hunt Decl., Ex. 3 at ¶ 5. )

More to the point, even if this Court has jurisdiction to decide whether Mr. Rathbun engaged in unethical behavior, the separate question of which state's rules govern Mr. Rathbun's conduct is not even addressed in GE's Motion.  For instance, GE makes no effort to explain why the Texas Disciplinary Rules are more appropriately applied than those of South Carolina, where Mr. Rathbun resided during the relevant time period.  GE has simply failed to establish that Mr.

---

[1] GE's arguments that Mr. Rathbun would be disqualified from representing IBL in connection with this litigation are based on an entirely hypothetical scenario:  Mr. Rathbun never represented IBL in connection with this litigation.  Nor could this hypothetical scenario ever come to pass; as indicated in GE's Motion, Mr. Rathbun died in mid-2016.

Rathbun's conduct should be subject to the Texas Disciplinary Rules. Based on this failure alone, GE's Motion must be denied.

## IV.    MR. RATHBUN DID NOT VIOLATE TEXAS DISCIPLINARY RULE 1.09(a)

Even if Mr. Rathbun was subject to the Texas Disciplinary Rules, GE's Motion is limited to his alleged violation of Texas Disciplinary Rule 1.09(a). Although GE asserts, in a footnote, that Mr. Rathbun also violated Rules 1.05 and 1.06 of the Texas Disciplinary Rules, GE does so (admittedly) without any analysis or presentation of evidence. (Defs.' Mot. at 11, fn. 7 (Dkt. No. 160).) GE's analysis is limited to Mr. Rathbun's alleged violation of his duties to a former client.

Rule 1.09(a) by its own terms only applies if an attorney represents "another person in a matter *adverse* to the former client." Tex. Disp. R. 1.09(a) (emphasis added). GE's Motion ignores this necessary, foundational part of the Rule. GE literally never mentions this adversity requirement at all. GE never identifies any engagement of Mr. Rathbun by IBL that was *adverse* to GE after Mr. Rathbun ceased representing GE in mid-2013.

As outlined in Section II above, Mr. Rathbun visited IBL's facility in April 2014 in order to conduct a final, updated patent search related to the IBL LifeBorne Infant Warmer. Conducting searches for relevant patents is not in any way adverse to GE. GE's Motion makes no attempt to establish that Mr. Rathbun's patent search engagement for IBL in 2014 was adverse to GE and, thus, fails to establish a violation of Rule 1.09(a).

GE's Motion is filled with unsupported accusations, such as "Mr. Rathbun assisted B&T/IBL in preparing to sue GE" and "Mr. Rathbun assisted IBL with its response to GE's pre-suit communication concerning the patents-in-suit in preparations that led to IBL's filing of this declaratory judgment suit." (Defs.' Mot. at 5, 7 (Dkt. 160).) None of these allegations are

supported by the evidence.   On the contrary, Mr. Rathbun had no involvement in the identification or selection of counsel or in preparing any of IBL's positions in this litigation.

GE's attacks on Mr. Rathbun's behavior thus stall from the very start:   GE fails to identify *any adverse* engagement by Mr. Rathbun for IBL after Mr. Rathbun ceased working for GE in mid-2013.   The only engagement identified by the evidence presented – Mr. Rathbun's updated patent search in 2014 – was not in any way *adverse* to the interests of GE, and GE makes no attempt to establish otherwise.   GE's Motion must fail for this reason.

Additionally, Rule 1.09(a) does not prohibit a lawyer from engaging in *all* matters that are adverse to former clients.   Rather, adversity to former clients is only improper in 3 specific scenarios: "(1) [where the new client] questions the validity of the lawyer's services of work product for the former client; (2) if the representation in reasonable probability will involve a violation of [the lawyer's confidentiality obligations to the former client under] Rule 1.05; or (3) if [the two representations relate to] the same or a substantially related matter."   Tex. Disp. R. 1.09(a).   As explained in detail below, GE's Motion fails to prove that Mr. Rathbun's engagements for IBL fall within any of the 3 prohibited scenarios.

A.      **Rule 1.09(a)(1)**

GE's Motion makes no attempt to establish that Mr. Rathbun's work for IBL "question[ed] the validity of [his] services or work product for [GE]," Tex. Disp. R. 1.09(a)(1), other than to generally state that Mr. Rathbun "prosecuted the patents-in-suit on behalf of GE, and then by virtue of his representation of IBL, offered advice on the issues of validity and infringement on at least those very same patents."  (Defs.' Mot. at 11 (Dkt. No. 160).)  GE makes no attempt to identify what "advice" is referenced or how that advice supposedly questioned the validity of his services performed for GE.

Presumably, GE is *not* referring to Mr. Rathbun's two opinion letters, written in 2011 and 2012: both of those were written while Mr. Rathbun *concurrently* represented GE and IBL. Neither of these two engagements for IBL could violate Rule 1.09(a)(1) as they did not relate to the work of one of Mr. Rathbun's *former* clients at the time.

In fact, even the 2011 and 2012 opinion letters do not question the validity of Mr. Rathbun's work performed for GE.  In the first of these two letters, dated June 15, 2011, Mr. Rathbun opined that IBL's infant warmer reflector design did not infringe U.S. Patent 6,245,010. (*See* Ex. 11 to Sklenar Decl. (Dkt. No. 162-12).)  As is evident from reading this letter, there is nothing in Mr. Rathbun's analysis that questioned the validity of any work product he performed for GE.  GE offers no evidence that Mr. Rathbun ever represented GE in any engagement where he compared the '010 patent to any IBL product.  Mr. Rathbun's 2011 opinion letter does not, in any way, denigrate or question the services he provided to GE in prosecuting the '010 patent.

Mr. Rathbun's second opinion letter for IBL, dated November 21, 2012, concludes that U.S. Patent 6,471,634 was invalid in view of a prior art infant warmer, the Resuscitaire infant warmer.  (*See* Ex. 12 to Sklenar Decl. (Dkt. No. 162-13).)  Notably, when Mr. Rathbun wrote and prosecuted the '634 patent for GE, he did *not* inform the Patent Office about the Resuscitaire product.  (Ex. 4; *see* Refs. Cited for U.S. Pat. No. 6,471,634.)  Neither did the Patent Office identify the Resuscitaire product as prior art.  (*Id.*)  In other words, Mr. Rathbun sought and obtained the '634 patent without any reference to the Resuscitaire product.  Mr. Rathbun's opinion letter prepared for IBL addresses the validity of the '634 patent vis-à-vis the Resuscitaire product – something he did not address in his representation of GE.  GE's Motion does not explain how preparing this letter for IBL questioned the validity of Mr. Rathbun's services to GE.

GE's argument is wholly superficial:  GE simply asserts that Mr. Rathbun assisted in prosecuting the '010 and '634 patents, and later represented IBL on matters concerning those two patents.  These generalized allegations fall well short of establishing any conflict. "Disqualification, in this case, requires more than that two cases involve the same patent."  *See Finalrod IP, LLC v. John Crane, Inc.*, 2016 WL 866930, *5 (W.D. Tex. Mar. 3, 2016). (Ex. 5.) "[T]he mere fact that both representations involve the same patent is not enough to establish that the two matters are substantially related within the meaning of Rule 1.9."  *Gillette Co. v. Provost*, 33 Mass. L. Rptr. 327, 2016 WL 2610677, *7 (May 5, 2016).  (Ex 6.)

It is not improper for an attorney to write an opinion directed to a patent he helped to obtain.  In *Telectronics Proprietary, Ltd. v. Medtronic, Inc.*, 836 F.2d 1332 (Fed. Cir. 1988), the Federal Circuit considered Medtronic's motion to disqualify two attorneys, Rackman and Nealon.  *Id.* at 1334.  Nealon had formerly been in-house patent counsel for Medtronic's predecessor, and Rackman had served as outside patent counsel for that same company.  *Id.* at 1335.  Both were involved in the prosecution of the '242 patent (the patent-in-suit), and both subsequently represented the plaintiff, Telectronics, in the litigation.  *Id.*  Medtronic sought to disqualify Nealon and Rackman, and the motion was denied.  *Id.* at 1333.

The Federal Circuit explained that neither Rackman nor Nealon would be required to question the validity of the work they performed for their former client.  The Court reasoned "no change in position is required on the infringement issue because Telectronics' allegedly infringing products were not first produced until sometime after the issuance of the '242 patent." *Id.* at 1338.  Just like in that case, IBL did not even begin to develop the LifeBorne Infant Warmer until several years *after* the last of GE's 5 patents-in-suit issued in 2007.  By definition, any infringement analysis of the IBL LifeBorne Infant Warmer could not be contrary to the work

performed by Mr. Rathbun for GE concerning the 5 patents-in-suit, because the LifeBorne Infant Warmer product did not even exist at the time he worked on the patents.

The *Telectronics* case also addressed invalidity opinions. While noting that "Telectronics does concede that it would be unusual impeaching their own work product," the Court recognized "that is not this case." *Id.* at 1338. The Court noted "the proof of invalidity of the '242 patent will be limited to prior art that was not known at the time that the application was prosecuted. No change in any position taken during the prosecution of the '242 patent is required to recognize the significance of that art." *Id.* The same facts are presently before this Court. Mr. Rathbun's 2012 opinion concerning the validity of GE's '634 patent is limited to a single prior art reference, the Resuscitaire infant warmer. This reference was *not* disclosed to the Patent Office during prosecution of the '634 patent. Therefore, just as described by the Federal Circuit in *Telectronics*, Mr. Rathbun's 2012 opinion letter does not, in any way, require a change in a position taken during prosecution of the '634 patent.

In *Power MOSFET Techs, L.L.C. v. Siemens AG*, 2002 WL 32785219 (E.D. Tex. Sept. 30, 2002), Siemens sought to disqualify the Finnegan Henderson firm as litigation counsel for Power MOSFET. *Id.* at *1. (Ex. 7) In work for Siemens, Finnegan Henderson provided several patent opinions concerning its products. *Id.* At least 5 of the patents that were the subject of those opinions were relevant, as prior art, to the litigation. *Id.* at *3. This alone, the court reasoned, was immaterial. *Id.* The issue was whether Finnegan Henderson "is taking positions in this case *contrary to those provided as advice* to [Siemens] in the previous representation. That does not appear to be the case." *Id.* (emphasis added). The court further reasoned "while [Siemens] is correct that the general subject matter is the same, the particulars look quite

- 9 -

dissimilar.  Indeed, even where there may be some interpretive overlap, it does not suggest that the two representations are so related as to disqualify [Finnegan Henderson]."  *Id.* at *5.

Neither of Mr. Rathbun's two opinion letters that concern GE patents (written while GE alleges he was still representing GE) questions the validity of Mr. Rathbun's services for GE. The Motion makes no attempt to establish how either of these two letters "question[s] the validity" of his services performed for GE.  GE cites no law in support of its position.  GE points to no communication in which either IBL or Mr. Rathbun questioned the validity of Mr. Rathbun's services for GE.   IBL has not contested the validity of the '634 patent or Mr. Rathbun's services for GE based upon the record Mr. Rathbun presented to the Patent Office.

As to Mr. Rathbun's services for IBL after mid-2013 – when GE was a former client of Mr. Rathbun – GE's Motion also fails to identify any matter where Mr. Rathbun's services for GE are in question.  Mr. Rathbun represented IBL in the spring of 2014 in order to conduct a final prior art search related to features of the IBL LifeBorne Infant Warmer.  (Ex. 2 at Entry Nos. 14 and 161A-B.)   He was not engaged by IBL to assist in the preparation of IBL's declaratory judgment complaint, or otherwise advise IBL on matters that would question Mr. Rathbun's services previously performed for GE.  Conducting prior art searches – even searches identifying prior art to the GE patents – would not "question the validity" of Mr. Rathbun's services for GE.  Similarly, none of the entries on IBL's privilege log identify any discussions involving Mr. Rathbun in which the validity of his services on behalf of GE was in question.

B.      **Rule 1.09(a)(2)**

Texas Disciplinary Rule 1.09 also prohibits representations adverse to former clients where "the representation in reasonable probability will involve a violation of Rule 1.05."  Tex. Disp. R. 1.09(a)(2).  With regard to this requirement, GE's Motion is amazingly devoid of any

recitation of facts, law, or analysis.  The entirety of GE's attempt to satisfy this requirement reads as follows:

> [B]ased on the documents produced to date authored by Mr. Rathbun on IBL's behalf, as well as IBL's privilege log reflecting documents that IBL continues to withhold, there is far more than a "reasonable probability" that Mr. Rathbun's representation of IBL caused him to violate his confidentiality obligations to GE.

(Defs.' Mot. at 11-12 (Dkt. No. 160).)   GE makes no effort to explain which "documents produced to date" or privilege log entries are referenced.  GE makes no attempt to evaluate the requirements of Rule 1.05 of the Texas Disciplinary Rules.

In 2010, prior to conducting any analysis of any GE patent for IBL, Mr. Rathbun assured IBL that he did *not* possess any relevant GE confidential information.  Mr. Rathbun wrote "this is to let you know that I have no confidential information relating to the GE infant warmer." (Ex. 1.)  He continued: "I have not received any information from GE as to any improvement on their existing warmer or even personally seen the present GE warmer for over 8 years so I do not believe I possess any information that would conflict me out from working with you, should you so desire."  (*Id.*)  This is not surprising, as the GE patents-in-suit have been issued and available to the public for several years.  Mr. Rathbun further explained "although I did write various patent applications concerning the GE warmer, all have been published and therefore the information is readily available to the public."  (*Id.*)  GE cannot rebut Mr. Rathbun's own specific statements, and instead offers only vague references to some unidentified "confidential information" that Mr. Rathbun supposedly possessed.

GE cannot obtain the extraordinary relief of attorney disqualification on the vague and unsubstantiated allegations set out in its motion.  *Finalrod IP*, 2016 WL 866930 at *6 ("While Defendants attempt to argue that the infringement issues regarding the '431 patent 'will necessarily involve confidential information gathered in the course of prosecuting the '431

- 11 -

patent,' they have failed to carry their burden to show that the Matthews firm's representation of Plaintiffs would in reasonable probability entail disclosure of any confidential information. Defendants have not delineated and explained the confidential information.") (Ex. 5); *Gillette Co.*, 2016 WL 2610677 at *8 ("Gillette's conclusory and unexplained allegation that Cekala had disclosed and used 'privileged information with respect to Gillette's patent, trade secret, and litigation strategy' is therefore not enough to state a claim that Cekala is using confidential factual information obtained from Gillette to benefit ShaveLogic.") (Ex. 6.)

The only "documents produced to date authored by Mr. Rathbun" are documents related to the 2011 and 2012 opinion letters.  There is absolutely no "reasonable probability" that Mr. Rathbun violated any confidentiality obligation to GE in preparing these letters; this is evident from reading the letters themselves.  Despite repeatedly referencing these letters, GE *never once* mentions the content of the letters, nor attempts to establish that they contain any confidential GE information.  GE can point to no GE confidential information contained in either of these letters, and makes no effort to do so.  In fact, GE's Motion is startlingly silent about the actual content of Mr. Rathbun's two opinion letters.  In both of these letters, Mr. Rathbun expressly states that he is relying on *public* information in reaching his conclusions.  (*See* Ex. 11 to Sklenar Decl. (Dkt. No. 162-12); *see also* Ex. 12 to Sklenar Decl. (Dkt. No. 162-13).)  Neither opinion letter contains any information that could be remotely described as confidential to GE, and GE makes no effort to suggest otherwise.

This Court's recent decision in *Finalrod IP* is instructive.  In *Finalrod*, the defendant sought to disqualify the Matthews Law Firm from representing the plaintiff in the litigation. 2016 WL 866930 at *2. (Ex. 5.)  The court considered both the Texas Disciplinary Rules, including Texas Rule 1.09, and the ABA's Model Rules.  *Id.* at *3.  Upon a detailed review of

the evidence, this Court concluded "the evidence Defendants produced in support of their Motion to disqualify does not demonstrate that any confidential information was obtained in regard to the '431 patent, especially in light of the public's ability to access the very documents which Defendants contend contain certain confidential information." *Id.* at *6. The same is true in the present case. Neither of the 2011 and 2012 opinion letters contains any information confidential to GE. Tellingly, GE never argues to the contrary.

Furthermore, GE cannot identify a single entry from IBL's privilege log that in any way suggests a "reasonable probability" of a disclosure by Mr. Rathbun of any confidential GE information. In fact, there are none. Here, GE drastically distorts the substance and frequency of communications between Mr. Rathbun and IBL.

All of Mr. Rathbun's pre-2013 communications are related to (1) Mr. Rathbun's 2011 and 2012 opinions (*See* Ex. 11-12 to Sklenar Decl. (Dkt. No. 162-12)), (2) Mr. Rathbun's opinion concerning a non-GE patent (Ex. 2 at Entry No. 26) , or (3) Mr. Rathbun's general patent searching services for IBL. (*Id.* 117A-C, 214, 26, and 119B.) Mr. Rathbun's two opinion letters have been produced in this litigation, and conclusively demonstrate that he neither used nor disclosed any confidential GE information. Similarly, Mr. Rathbun's communications concerning his patent searching reveals that he conducted no analysis of the GE patents and shared no confidential GE information with IBL. (Ex. 1; Ex. 2 at Entry Nos. 117A-C, 214, 26, and 119B.) There is no logical connection between searches to identify prior art − which by definition is public − and any confidential GE information.

Between February 26, 2014 (the date GE sent its threat letter) and May 8, 2014 (the date IBL filed its declaratory judgment complaint in response to that letter), Mr. Rathbun authored 3 documents for IBL that were identified on IBL's privilege log. (Ex. 8 at Entry Nos. 143B, 107G,

and 219.)  The first communication authored by Mr. Rathbun, dated February 27, 2014, simply discusses a potential meeting in Austin.  (*Id.* at Entry 143B.)  The second communication authored by Mr. Rathbun, dated March 20, 2014, states, in its *entirety*, "yes," when asked about his travel plans to Austin, Texas.  This single word communication generated several entries in IBL's privilege log, as others replied with their own travel plans.  (*Id.* at 107G.)  Last, Mr. Rathbun authored a document dated April 8, 2014, concerning his updated patent search.  None of the GE patents-in-suit is mentioned, and there is no disclosure or discussion of any confidential GE information.  (*Id.* at 219.)

B&T recently received Mr. Rathbun's IBL project files from his widow and is preparing a privilege log of his communications with IBL from those files.  On July 18, 2014, Mr. Rathbun prepared a prior art search report of potential prior art to the GE '970 patent after the filing of IBL's declaratory judgment complaint.  However, there was no invalidity or infringement analysis of the '970 patent (or any other GE patent), and the report contained no confidential GE information.

GE incorrectly, and improperly, asserts that Mr. Rathbun's communications with IBL prior to the filing of IBL's declaratory judgment complaint were much more extensive than they actually were.  The three communications identified on IBL's privilege log that were authored by Mr. Rathbun in this time period addressed either his travel plans or his unrelated patent search work.  (*See* Exhibit 8 at Entry Nos. 143B, 107G, and 219.)

GE must do more than simply make accusations:  it must identify, with some specificity, GE confidential information, and establish how or why it would be "reasonably probable" that Mr. Rathbun would have used this confidential information in providing services to IBL.  GE completely failed to engage in this analysis.

- 14 -

### C.      Rule 1.09(a)(3)

Finally, GE argues that Mr. Rathbun violated Rule 1.09's prohibition on "substantially related matter[s]" that are adverse to former clients, Tex. Disp. R. 1.09(a)(3), "by providing legal analyses and prior art searching on [the 5 patents-in-suit] which was intended to support IBL's arguments that the patents were invalid and/or not infringed."  (Defs'. Mot. at 12-13 (Dkt. 160).) There is simply no evidence to support this broad conclusion.  Notably, GE does not identify any supportive evidence but, rather, simply refers generally to a section of its recitation of the facts in the Motion.

Two matters are not "substantially related" simply because they relate to the same patent. "The mere fact that both representations involved the same patent is not enough to establish that the two matters are substantially related within the meaning of Rule 1.9."  *Gillette Co.*, 2016 WL 2610677 at *7. (Ex. 6.)   "There is no dispute in this case that the Matthews firm initially represented Rutledge in obtaining and prosecuting the '431 patent. . . . The prosecution and assignment of the '431 patent by the Matthews firm is not substantially related to the matters in this case where the firm is defending Plaintiffs in the lawsuit against infringement of the '431 patent." *Finalrod IP*, 2016 WL 866930 at *5.  (Ex. 5.)

As discussed above, Mr. Rathbun provided IBL "legal analyses" on two GE patents:  the '010 patent and the '634 patent (both of these analyses were performed while Mr. Rathbun was currently representing GE, and Rule 1.09 is therefore inapplicable).  There is no evidence that Mr. Rathbun provided "legal analysis" with respect to the remaining three GE patents.  GE can cite to no such evidence.

It is not true that Mr. Rathbun provided "prior art searching" on the 5 GE patents, or that Mr. Rathbun's searching was "intended to support IBL's arguments that the patents were invalid and/or not infringed."  (Defs.' Mot. at 12-13 (Dkt. No. 160).)   It is true that Mr. Rathbun

conducted prior art searching for IBL multiple times, between 2009 and 2012.  Contrary to GE's assertions, these searches were *not* searches on the 5 GE patents; rather, they were searches directed to features of the IBL LifeBorne Infant Warmer.  Similarly, GE's wild allegation that these searches were "intended to support IBL's arguments that the patents were invalid and/or not infringed" is wholly unsupported.  These searches were first completed more than 18 months before GE first threatened IBL with infringement.  And, as noted above, none of these searches provided any analysis concerning invalidity or infringement of any of the GE patents-in-suit.

As mentioned above, on July 18, 2014, Mr. Rathbun provided IBL with a report of prior art to the GE '970 patent.  This was after the declaratory judgment complaint was filed.  Furthermore, there was no infringement or validity analysis provided concerning the '970 patent.

Even Mr. Rathbun's "legal analyses" of GE's '010 and '634 patents cannot be assumed to be "substantially related" to Mr. Rathbun's prosecution work for GE merely because the two representations involve the same patents.  Perhaps the most thorough discussion of this issue is found in the recent decision of *Gillette Company v. Provost*.  In that case, attorney Cekala had worked as a patent attorney for Gillette for almost 20 years.  2016 WL 2610677 at *1.  (Ex. 6.) Gillette alleged that Cekala had access to privileged communications and information concerning Gillette's patents as a result of his work.  *Id*.  After leaving Gillette, Cekala started work for ShaveLogic, a direct competitor of Gillette.  *Id*.  In fact, ShaveLogic informed its investors that Cekala's "intimate knowledge of Gillette's intellectual property portfolio and patent strategy" gave ShaveLogic "a competitive edge in the market."  *Id*.  ShaveLogic hired Cekala "to provide freedom to operate opinions respecting Gillette patents, including patents whose prosecution he oversaw."  *Id*.  Gillette sought to charge Cekala with breaching his fiduciary duties to his former client.  *Id*.  The court rejected Gillette's claim.  *Id*.

The court analyzed Cekala's conduct under Rule 1.9 of the Massachusetts Rules of Professional Conduct governing conflicts arising from a lawyer's representation of a former client.[2]  *Id*. at *3.  First, the court noted that "one client is not 'adverse' to the interests of another client, for purposes of lawyers' ethical obligations, merely because the two clients compete economically."  *Id*. at * 4. The court then found "the successful prosecution of a particular patent for a former client 'is not substantially related' to a later representation concerning whether a different client has infringed that patent. . . . The mere fact that both representations involved the same patent is not enough to establish that the two matters are substantially related within the meaning of Rule 1.9."  *Id*. at *7.  The court further explained:

> The allegations that Cekala developed expertise regarding the scope and meaning of some of Gillette's patents while he worked for Gillette as a patent attorney are beside the point.  Patents are public documents that may be read and analyzed by anyone. . . . That is the whole point. . . . As noted above, nothing in Rule 1.9 bars a lawyer from using publicly available information, including what is disclosed in a patent, to help a current client compete economically with a former client.

*Id*. at *5.

Similarly, in *Finalrod IP*, this Court noted that "(1) disqualification is a severe action that should not be applied 'mechanically' and (2) a court should consider 'all the facts particular to the case.'"  2016 WL 866930 at *4.  The court reasoned "the prosecution and assignment of the '431 patent by the Matthews firm is not substantially related to the matters in this case where the firm is defending Plaintiffs in a lawsuit against infringement of the '431 patent. . . . While it is true that both representations involve the '431 patent, that is the end of their similarity for disqualification purposes. . . . Disqualification, in this case, requires more than that two cases

---

[2] "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Mass. R. Prof. Conduct 1.9(a).

involve the same patent." *Id.* at *5.  Likewise, in *Power MOSFET*, the court recognized that determining whether litigation is "substantially related" requires a focus "on the actual issues in dispute and causes of action common to both representations in addition to the subject matter of the suit."  2002 WL 32785219 at *1.

GE has simply asserted that Mr. Rathbun's representations of GE and IBL are "substantially related matter[s]" because they involve some of the same patents, but has not analyzed the actual issues involved in these two representations.  GE has not shown that Mr. Rathbun violated Texas Disciplinary Rule 1.09(a).

## V.   NO EVIDENCE SUPPORTS DISQUALIFICATION OF B&T

GE's true aim is to disqualify IBL's litigation counsel, B&T, from its continued involvement in this case.  Approximately 7 months from trial, with fact discovery nearly complete, GE seeks to detonate this case by requiring IBL to obtain new litigation counsel.  Like its arguments regarding Mr. Rathbun, GE's arguments directed to B&T are replete with assumptions and accusations, but fail to identify any supporting evidence.

GE's Motion to disqualify B&T begins by assuming that B&T and Mr. Rathbun were "co-counsel."  (Defs.' Mot. at 14 (Dkt. 160).)  There is no evidence in the record that Mr. Rathbun represented IBL for purposes of responding to GE's infringement accusations or this litigation.  There is no evidence that Mr. Rathbun and B&T acted as co-counsel on any matter.

As GE acknowledges, GE bears the burden of proving that "'there were substantive conversations between disqualified counsel and co-counsel, joint preparation for trial by those counsel, or the apparent receipt by co-counsel of confidential information.'"  *Id.* (quoting *In re Amer. Home Prods. Corp.*, 985 S.W.2d 68, 81 (Tex. 1998)).  Not only does GE fail to establish that Mr. Rathbun and B&T were co-counsel, GE cannot identify any substantive conversations,

joint preparation for trial, or receipt of confidential information.   GE states that Mr. Rathbun "assisted IBL in identifying litigation counsel" but cannot cite any supporting evidence for this statement.  *Id*.  In fact, he did not.  And, even if it were true that Mr. Rathbun identified B&T as potential litigation counsel (which he did not), that would not satisfy the *In re American Home Products* standard.   GE then suggests that Mr. Rathbun and B&T "engaged in numerous communications" leading up to the filing of the complaint, another statement that is simply not true.   At most, the evidence supports that a few communications took place between Mr. Rathbun and B&T; there is no evidence that any of these included any substantive information or receipt by B&T of any confidential information.

In fact, GE's Motion relies entirely on B&T's receipt of the 2011 and 2012 opinion letters.  (Defs.' Mot. at 10 (Dkt. 160).)  Oddly, GE argues that Mr. Hunt tried to deny having possession of these documents.  This is simply not true.  In fact, B&T and IBL identified these two letters on its privilege log, and later chose to produce these letters to GE in discovery.  To the extent that it matters – and it does not – IBL provided these two opinion letters to B&T on September 26, 2014, months after IBL filed its complaint.  (Ex. 2 at Entry No. 220)   It is neither startling nor improper that B&T, IBL's litigation counsel, would collect relevant evidence in IBL's possession.  Nothing about these letters, however, satisfies GE's burden.  There is nothing in these letters that suggests any "substantive conversations" between Mr. Rathbun and B&T, any joint preparation for trial, or the receipt of confidential information.

GE's reliance on *Dynamic Geo* is simply misplaced.  There, this Court found that there were multiple substantive communications between Acacia's in-house counsel and outside counsel used to prepare and file the lawsuit against Schlumberger.   There are simply no comparable facts presented in the present case.

Much more relevant to the issue of imputation of conflicts with other counsel is this Court's recent decision in *National Oil Well Farco, LP v. Omron Oilfield & Marine, Inc.*, 60 F. Supp.3d 751 (W.D. Texas 2014). There, this Court conducted an extensive discussion of the case law and concluded "under Fifth Circuit precedent, there is no established irrebuttable presumption a lawyer shares client confidences he possesses with other lawyers at his law firm." *National Oil Well*, 60 F. Supp. at 762. In *National Oil Well*, attorney Wunder worked for the law firm that was analyzing the patent-in-suit and potential patent infringement claims. He later left the law firm and joined the law firm handling the patent litigation for the defendant. This Court noted that litigation counsel provided affidavits indicating that Mr. Wunder did not assist in the litigation.

The *National Oil Well* decision further noted that Mr. Wunder had left the litigation counsel firm such that "there is no ongoing risk of future disclosure." In the present case, Mr. Rathbun is deceased and no ongoing risk of future disclosure exists. The Court further recognized that "this case was filed more than two years ago, has traversed the intensive *Markman* process, has made a stop at the USPTO on a petition for *inter partes* review, and returned to this Court where the parties have engaged in lengthy discovery, which is nearly complete as trial soon approaches in April 2015. To disqualify NOV's counsel and have it hire new counsel at this juncture would almost certainly result in yet further delay and inefficient resolution of this lawsuit." *National Oil Well*, 60 F. Supp. at 767. An almost identical scenario faces the Court now; this case was filed more than two years ago, has completed the *Markman* process, and has nearly completed discovery. Trial is approximately 7 months away. It would result in incredible inefficiencies – not to mention enormous prejudice to IBL – to require IBL to obtain substitute counsel.

Critically, the *National Oil Well* decision noted "Omron has failed to explain to the Court the harm which could result from the confidential information at issue. Wunder acknowledged in his deposition he was aware of an Invalidity Opinion, and he knew its conclusion. But the Invalidity Opinions are now in the case, and Omron has waived the attorney-client privilege concerning the opinions and related communications. . . . Omron simply never explains to the Court which specific piece of confidential information could lead to what specific harm." *National Oil Well*, 60 F. Supp. at 769-770. The same is true in the present case. GE never explains how it has been harmed by Mr. Rathbun's work for IBL. Undoubtedly, GE recognizes that Mr. Rathbun's opinion letters are powerful evidence that GE cannot succeed in its claims against IBL. They are also powerful evidence supporting GE's misconduct in obtaining and enforcing its patents. This does not justify GE's motions, or its attempts to avoid the evidence of its misconduct.

This case mirrors the *National Oil Well* facts: "it is Omron's burden to show why disqualification, a severe remedy, is called for in these circumstances, and Omron does not even suggest what harm might occur. On the other hand, the harm to NOV as a consequence of disqualification is sure and significant." *National Oil Well*, 60 F. Supp. at 769. GE makes no attempt to identify or quantify any harm to it, yet the consequences to IBL would be "sure and significant."

Next, GE attempts to smear Mr. Hunt's reputation by suggesting that he knowingly assisted Mr. Rathbun in violating disciplinary rules. (Defs.' Mot. at 16 (Dkt. 160).) As outlined extensively above, GE has failed to establish that Mr. Rathbun *did* violate his ethical obligations to GE. GE also asserts that Mr. Hunt "had an absolute duty to refrain from any communications with Mr. Rathbun about the patents-in-suit that would have resulted in Mr. Rathbun's violation

of his duties to GE." (*Id.*) GE makes this accusation, then fails to cite any communication between Mr. Rathbun and B&T in violation of Mr. Rathbun's duties to GE. Any suggestion by GE that Mr. Hunt or B&T "knowingly assisted" Mr. Rathbun in violating his ethical obligations, or that Mr. Hunt or B&T "acted in concert with and urged Mr. Rathbun to violate his ethical obligation to GE" is irresponsible, unsupported by the facts, and should be admonished by the Court.

GE also complains that IBL continues to withhold certain documents prepared by Mr. Rathbun, or sent to him by IBL, as privileged. IBL chose to waive the attorney-client privilege only as to Roger Rathbun's opinion letters of June 15, 2011, and November 21, 2012, and produced those letters and related communications. It is neither surprising nor improper that IBL has chosen to maintain the privilege of its communications with Mr. Rathbun on other, different subjects. GE makes no attempt to establish that IBL and Mr. Rathbun did not have an attorney-client relationship, or that these other communications are not properly withheld as privileged. GE cannot, and has not, established that any of these communications relate to the GE patents-in-suit, or contain any information confidential to GE. In fact, B&T offered to disclose entries from its privilege log to GE if GE would agree that they did not constitute a further waiver of the attorney-client privilege, and GE refused this offer. IBL further hereby offers to provide any of its attorney-client communications to this Court for an *in camera* review.

## VI.   THERE IS NO BASIS TO DISMISS IBL'S CLAIMS AND DEFENSES WITH PREJUDICE

GE's Motion falls far short of proving that a dismissal with prejudice of IBL's claims and defenses against GE is an appropriate sanction to levy against IBL. While GE provides a laundry list of supposedly "egregious conduct of IBL and B&T" (Defs.' Mot. at 17-18 (Dkt. 160)), GE fails to provide a single citation to evidence that proves any of these allegations or to

provide any legal analysis suggesting that any of the alleged conduct is improper.  "Because of their very potency, inherent powers must be exercised with restraint and discretion."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).  "Dismissing a case with prejudice is a harsh sanction," which the Fifth Circuit has held "should be confined to instances of bad faith or willful abuse of the judicial process."  *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1417 (5th Cir. 1995) (emphasis added).

GE's Motion does not establish that IBL or its attorneys engaged in any misconduct.  As discussed in detail above, GE has not shown that Mr. Rathbun violated any duty owed to GE or that IBL or B&T improperly utilized Mr. Rathbun's advice in this litigation.  GE additionally accuses IBL of soliciting privileged, proprietary, and confidential information from former GE employees/inventors, but does not, and cannot, provide evidence to support this bald accusation. GE takes issue with IBL's allegations of inequitable conduct against Mr. Mackin and Mr. Dykes while B&T represented those individuals for the limited purpose of responding to GE's subpoenas.  Yet, GE fails to provide any explanation as to how such an engagement is improper.

Even if the Court were to find that Mr. Rathbun violated some ethical obligation to GE as a former client (which it should not), GE's Motion entirely fails to establish "bad faith" on the part of IBL or its attorneys in this litigation, B&T.  GE provides no evidence that IBL or B&T lacked a good faith belief that Mr. Rathbun was conducting himself ethically.  To the contrary, as early as 2010, Mr. Rathbun expressly represented to IBL that he did not "possess any [GE] information that would conflict [him] out from working with" IBL to review the design of IBL's warmer vis-à-vis the GE patents.  (Ex. 1.)  Moreover, given the extremely limited interaction between Mr. Rathbun and both IBL and B&T, any potential ethical violation by Mr. Rathbun

does not "taint" IBL's claims and defenses.  None of Mr. Rathbun's actions are "intertwined with" IBL's claims and defenses in this litigation.

## VII.   CONCLUSION

For all of the reasons stated above, GE's Motion (Dkt. No. 160) should be denied in its entirety.

Dated: November 8, 2016                              Respectfully submitted,


                                                     */s/ Paul B. Hunt*
                                                     Paul B. Hunt (admitted *pro hac vice*)
                                                     Jeffrey T.G. Kelsey (admitted *pro hac vice*)
                                                     Joshua P. Larsen (admitted *pro hac vice*)
                                                     Sean M. Phipps (admitted *pro hac vice*)
                                                     BARNES & THORNBURG LLP
                                                     11 South Meridian Street
                                                     Indianapolis, IN  46204
                                                     Telephone: (317) 236-1313
                                                     Facsimile: (317) 231-7433
                                                     E-mail: paul.hunt@btlaw.com
                                                             jeffrey.kelsey@btlaw.com
                                                             joshua.larsen@btlaw.com
                                                             sean.phipps@btlaw.com

                                                     Chad S.C. Stover (admitted *pro hac vice*)
                                                     BARNES & THORNBURG LLP
                                                     1000 N. West Street, Suite 1500
                                                     Wilmington, DE 19801
                                                     Telephone: (302) 300-3474
                                                     Facsimile: (302) 300-3456
                                                     E-mail: chad.stover@btlaw.com

                                                     David S. Lill
                                                     State Bar No. 12352500
                                                     LILL FIRM, P.C.
                                                     4407 Bee Caves Road, Suite 111, Bldg. 1
                                                     Austin, Texas 78746
                                                     Telephone: (512) 330-0252
                                                     Facsimile: (844) 402 9814
                                                     Email: david@lillfirm.com

Attorneys for Plaintiff
INTERNATIONAL BIOMEDICAL, LTD.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of November 2016, I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record for Defendants General Electric Company and Datex-Ohmeda, Inc. (d/b/a GE Healthcare).

*/s/ Paul B. Hunt*
Paul B. Hunt

DMS 4427680v4